**Ruby L. WILLIAMS, S.S. # 237–60–0555, Plaintiff,**

v.

**Margaret M. HECKLER, Secretary, United States Department of Health and Human Services, Defendant.**

**No. ST–C–85–12.**

United States District Court,
W.D. North Carolina,
Statesville Division.

Dec. 6, 1985.

George L. Fitzgerald, Charlotte, N.C., for plaintiff.

Kenneth D. Bell, Asst. U.S. Atty., Asheville, N.C., for defendant.

## ORDER

McMILLAN, District Judge.

Ruby L. Williams was born January 12, 1928, and has a second grade education. She last worked as a winder in a textile plant.

On November 16, 1983, plaintiff filed an application for Social Security disability benefits and for supplemental security income. She alleged a disability due to emphysema. After a hearing, an administrative law judge (ALJ) denied the application on October 15, 1984. On December 31, 1984, the Appeals Council denied review.

Plaintiff filed suit in this court on January 11, 1985, seeking judicial review of the final decision of the Secretary of Health and Human Services. Pursuant to 42 U.S.C. § 405(g), this court has jurisdiction to review the final decision by the Secretary to see if it is supported by substantial evidence.

### Review of Testimony at the Hearing

At the hearing, plaintiff testified that she was unable to read and write and lived alone (Tr. 30). She stated that she worked as a winder in the textile industry from 1961 through 1981. She then drew unemployment compensation until November 1983. When she attempted to return to work as a winder, she was unable to pass the breathing test (Tr. 31).

Plaintiff testified that her nerves make her "wiggle around so much" that she gets tired even while sitting in a chair (Tr. 32). She said she lies down about half of the day (Tr. 34). Plaintiff said she has pain in the back of her neck and shoulders (Tr. 35) and wears a girdle and a back brace (Tr. 39). Whenever she tries to lift anything, she has a "big hurt" in her back (Tr. 36). When asked what she could lift during an 8-hour workday, she said she could not lift anything (Tr. 36–37).

Plaintiff said that she gets dizzy spells and headaches whenever she exerts herself too much (Tr. 37). Her concentration and memory are poor and because of that she sometimes loses her pills or forgets whether she has taken them (Tr. 38). She said she gets depressed and cries two to three times a day. She thinks she is getting worse. Plaintiff said her left foot hurts "like a toothache" (Tr. 35) and her right leg and arm get numb sometimes (Tr. 40). She also said she has trouble picking up small things with her hands (id.).

Plaintiff's son testified that plaintiff gets out of breath walking from one end of her trailer home to the other and that she has bad nerves and a poor memory (Tr. 44). He said that plaintiff is "just like a child" and people "have to lead her around" (Tr. 45). On being questioned by the ALJ as to whether plaintiff had not been equally in need of help when she worked, the son testified that plaintiff had gotten much worse in the last year because of her increasing memory loss (Tr. 46).

A neighbor of plaintiff also testified about plaintiff's pains, shortness of breath, and poor memory (Tr. 47). The neighbor testified that plaintiff could not lift a three-months-old baby (Tr. 48).

The ALJ found these witnesses credible (Tr. 49).

The next witness was a vocational expert. The ALJ asked him what jobs existed for the plaintiff if the plaintiff could do medium work but required a dust-free environment (Tr. 50). The expert said that plaintiff could be a cafeteria attendant, hand packager, or order culler in a warehouse, and that the same would be true if the ALJ found plaintiff could only do light work (Tr. 51). When the ALJ added the plaintiff was illiterate, cafeteria attendant was the only job the expert could come up with for plaintiff (Tr. 54).

When questioned by the attorney, the expert testified that if plaintiff's testimony about her nervous problems—depression, crying, memory and concentration difficul-

ties—were true, there would be no job plaintiff could do (Tr. 59–60). In addition, the expert agreed that if her testimony about pain were true, there would be no job she could do (Tr. 60).

### Review of the Medical Evidence

In 1983 Dr. M.A. Cronland treated the plaintiff twice for mild hypertension and for superficial phlebitis. The hypertension was controlled by medication (Tr. 118).

On December 9, 1983, plaintiff underwent consultative examination at the Shelby Medical Associates (Tr. 122). The physician noted a mild chronic bronchitis with a mild obstruction to airflow (Tr. 126). He found that plaintiff developed shortness of breath with exertion and when exposed to dust (Tr. 121). He stated that plaintiff would not be hired in the textile industry because her pulmonary studies were abnormal (Tr. 126). He determined that she was capable only of sedentary, light, and moderate activities in a dust-free atmosphere (Tr. 126).

Plaintiff is also a patient at the Mental Health Clinic where she has been treated for anxiety and depression (Tr. 146). Dr. Malti Mehta there observed a "very poor" memory (Tr. 147). Functionally, doctors at the clinic found that plaintiff had a moderate impairment of her ability to relate to others; a moderately severe impairment of her ability to comprehend and follow instructions; a mild to moderate impairment of her ability to perform simple tasks; a moderately severe impairment of her ability to perform complex tasks; a mild to moderate impairment of her ability to perform repetitive tasks; and a moderately severe impairment of her ability to perform varied tasks (Tr. 145–46). The doctors also noted that plaintiff had a major limitation of her intellectual functioning: "she cannot read or write and repeatedly confuses simple instructions, such as medication instructions, even when instructions are demonstrated and verbalized several times"; these limitations "impair conceptualization, insight and judgment" (Tr. 146).

After the hearing but before the ALJ's decision, the plaintiff underwent a consultative psychological evaluation (Tr. 149). The examiner found that she appeared to have a "diminished energy level and related to him in a vague manner" (Tr. 150). She "had considerable difficulty in following simple directions ..." and could not identify the month or date (Tr. 150). Plaintiff was given a WAIS–R IQ test and attained a verbal score of 67 and a performance IQ of 71. The full-scale score was 68 (Tr. 151). Achievement testing confirmed that plaintiff is illiterate. Bender-Gestalt testing indicated poor planning but no significant impairment of visual motor integration (id.). The Rorschach and Draw-a-person tests and the clinical interview indicated that plaintiff exhibited concrete thought processes but related to others in a "rather vague manner" (Tr. 152). Further, the plaintiff was suffering from a moderate level of depression and anxiety which was masked partially by medication. She also showed little confidence in her abilities (id.). The doctor concluded that plaintiff could follow simple directions "with some repetition in a structured setting" (Tr. 152 & 154), and that her recent and remote memory are mildly impaired (Tr. 152).

### Summary of ALJ's Decision

The ALJ found that plaintiff's testimony as to her medically-imposed limitations of functioning was "grossly disproportionate to the symptoms reported to and abnormalities noted by examining physicians" (Tr. 11). He felt, in contrast to what he stated at the hearing (Tr. 49), the plaintiff was not credible and that her "testimony was exaggerated and tailored to obtain disability benefits ..." (Tr. 12).

Nevertheless, the ALJ found that the plaintiff had "severe" impairments within the regulatory definition. He was not persuaded, however, that the plaintiff had "a mental or physical impairment or combination of impairments which meets, or is the medical equivalent of, an impairment listed in Appendix 1 ..." (Tr. 12). He thus con-

cluded that plaintiff did not meet the requirements of listing 12.05 C.

The ALJ next considered whether the plaintiff could work despite her impairments. He found that plaintiff could not return to her old job and that because of her intellectual deficit and her mild impairment of recent and remote memory, she could perform only jobs involving simple instructions (Tr. 13). He found that the plaintiff could perform jobs of "medium" work as defined in the regulations. He found that plaintiff had the "ability to understand and remember simple instructions and otherwise possesses the psychological characteristics to perform unskilled work" (*id.*). He stated that his assessment was "bolstered by the claimant's nearly 20 year work history as a winder in the textile industry, an unskilled occupation, [and the fact that] the claimant was prepared to return to this work but could not pass a breathing test" (*id.*).

The ALJ went to the grids and found that the plaintiff was not disabled. He further relied on the vocational expert's testimony though he did not go into what that testimony was.

### Discussion

The plaintiff has an I.Q. of 68; consequently the relevant listing is Section 12.05 C:

*Mental Retardation.* As manifested by:

\*  \*  \*  \*  \*  \*

C.  IQ of 60 to 69 inclusive (see 12.00B4) and a physical or other mental impairment imposing additional and significant work-related limitation of function.

20 C.F.R. 404, Subpart P, App. 1, § 12.05 C (1985). Thus, if the plaintiff has a "physical or other mental impairment imposing additional and significant work-related limitation of function," she is disabled and qualifies for benefits.

The ALJ found that plaintiff did not satisfy this second part of Section 12.05 C. He reached this conclusion despite finding in the previous sentence that the plaintiff's impairments were " 'severe' within the regulatory definition" (Tr. 12).

The regulatory definition of a severe impairment is an impairment which "significantly limits your physical or mental ability to do basic work activity." 20 C.F.R. 404.-1520(c). It is clearly impossible for plaintiff to have "severe" impairments and not have a "significant work-related limitation of function."

The court has considered the evidence carefully and finds that plaintiff is disabled under Section 12.05 C. The evidence shows that, in addition to low intelligence, plaintiff has work-related impairments that are "severe." She has emphysema that prevents her from returning to her old job; her memory has recently deteriorated; her concentration is poor; and she has difficulty relating to others. In addition, the plaintiff cannot lift even a three-months-old baby. These "severe" impairments impose "additional and significant work-related limitation of function." Plaintiff therefore is disabled under Section 12.05 C.

### ORDER

IT IS THEREFORE ORDERED:

1. That the plaintiff's motion for summary judgment is GRANTED.

2. That the case is REMANDED to the Secretary for computation and payment of benefits.

This 5 day of December, 1985.